**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| In Re: | * | |
| **Jason Whitney Bridges and** | * | **Case No. 13-10579-DER** |
| **Allysin Elizabeth Bridges,** | * | |
| Debtors. | * | **Chapter 11** |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## CHAPTER 11 PLAN OF REORGANIZATION

Jason Whitney Bridges and Allysin Elizabeth Bridges, (hereinafter "Mr. and Mrs. Bridges" or "Debtors in Possession" or "Debtors") hereby propose this Chapter 11 Plan of Reorganization (hereinafter the "Plan," as further defined below), pursuant to Section 1127(a) of Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1127(a) (hereinafter the "Bankruptcy Code").

**PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DEBTORS' DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THIS PLAN. THE PLAN PROPONENT RESERVES THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO THE DEBTORS' CHAPTER 11 DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESS, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE, AND THE MEANS OF FUNDING THIS PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

**THIS PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OF THE DEBTORS SHOULD EVALUATE THIS PLAN IN LIGHT OF THE PURPOSES FOR WHICH IT WAS PREPARED.**

**WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

## I.
## INTRODUCTION.

During the period September 14, 2004 through the present, a period of over 8 years, Mr. and Mrs. Bridges have operated a residential rental property business in Baltimore City, Maryland. In 2011, in the midst of the significant recession experienced by the real estate market, Mr. and Mrs. Bridges owned and they have continued to own as tenants by the entireties a one hundred percent (100%) ownership interest in four (4) multi-unit residential rental real properties located in Baltimore City, specifically, 712 Gorsuch Avenue, Baltimore, MD 21218 (hereinafter the "712 Gorsuch Avenue Property"), located in the Waverly neighborhood of Baltimore City, 1813 Saint Paul Street, Baltimore, MD 21201 (hereinafter the "1813 Saint Paul Street Property"), located in the Station North neighborhood of Baltimore City, and 835 Hollins Street, Baltimore, MD 21201 (hereinafter the "835 Hollins Street Property") and 818 Hollins Street, Baltimore MD 21201 (hereinafter known as the "818 Hollins Street Property), both of which are located in the Hollins Hill neighborhood of Baltimore City within a block of the University of Maryland Medical System's Bio-Tech Complex. Since April 29, 2005, Mr. Bridges also has owned and continues to own through the present a one-third

ownership interest as a joint tenant with his parents in a garage located on two lots located at and known as 858 Boyd Street, Baltimore, MD 21231-3306 and 860 Boyd Street, Baltimore City, Maryland 21201-1030. Mr. Bridges has used the garage for the storage of equipment and tools used in the Debtors' business, and he manages the garage on a daily basis.

Mr. Bridges has managed each of the 4 residential rental properties on a daily basis. Mr. Bridges' duties include the daily security of the 4 properties, the daily maintenance of leases and rent records, the collection of rent, the daily physical maintenance of the 4 properties, the ongoing repairs, replacement of equipment, fixtures, and systems of the properties, and the general rehabilitation work required for inner city properties over 90 years old. Mrs. Bridges works as a full time Occupational Therapist for The Johns Hopkins Hospital in Baltimore City, Maryland.

Mr. and Mrs. Bridges' goals are to improve their business methods, to establish and to utilize efficiently in their business the latest available technology, and to modify the loans secured by the Debtors' 4 rental real properties and one vehicle for the purposes of lowering their debt service, increasing the cash flow of their business, and distributing the Debtors' net disposable income to their general unsecured creditors over the 5 year period of their Chapter 11 Plan.

The Debtors' Plan will refer to Disclosure Statement Exhibits, including but not limited to exhibits which will show: (1) the Debtors' assets and liabilities, Exhibits 1 through 4 to the Disclosure Statement, (2) the Debtors' business history prior to the Chapter 11 case, including income, expenses, and net operating income, for the 2 year period from January 1, 2011 through December 31, 2012, Exhibits 5 and 6 to the

Disclosure Statement, (3) the Debtors' business history during the Chapter 11 case, including income, expenses, and net operating income, for the first 7 months of January 2013 through July 2013, Exhibit 7 to the Disclosure Statement, (4) the Debtors' projected business, including income, expenses, and net disposable income projected over the five year period of the Plan: using a representative period from August 1, 2013 through July 31, 2018, Exhibit 8 to the Disclosure Statement, and (5) the alternative to reorganization, which will be explained in the Liquidation Analysis, Exhibit 9 to the Disclosure Statement. The Plan also will refer to the Debtors' filing of their monthly operating reports and their quarterly payments to the Office of the United States Trustee.

Mr. and Mrs. Bridges intend to use the net operating income from their 4 residential rental properties in their residential rental property business as the substantial part of their monthly disposable income for the five year period of their Chapter 11 Plan to fund the Plan. In their Plan, Mr. and Mrs. Bridges have proposed a fair and reasonable treatment of each of the classes of creditor claims in an effort both to reorganize their business successfully and to pay back to their creditors the debt which they can afford to repay. The principal amounts, the interest rates, and the terms of each loan set forth in the paragraphs treating the claims of each of the 5 secured creditor classes in Section IV. <u>Treatment of Claims and Interests</u> of the Plan provide the Debtors increased cash flow as shown in the Chapter 11 Plan Projected Disposable Income for the Five Year Period of August 1, 2013 through July 31, 2018, which will be filed as a support document as Exhibit 8 to the Disclosure Statement. Exhibit 8 shows the actual projected monthly income and expenses of the Debtors, and the Debtors' projected monthly disposable income which shall be used to make payments to the Debtors' unsecured creditors.

4

## II. RULES OF CONSTRUCTION AND DEFINITIONS

For the purposes of the Plan, the following terms shall have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Sec. 503(b) of the Code, and of a kind referred to in Sec. 507(a)(2) of the Code, including without limitation, the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 case by preserving the estate of the Debtor and operating the business of the Debtor, including wages, salaries, or commissions for services, compensation for legal and other services, and reimbursement of expenses awarded under Code Sec. 330(a) or 331, and all fees and charges assessed against the estate under Chapter 123 of Title 28 of the United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Court to be Allowed. The Administrative Claims Bar Date will be established by the Court as a specific date prior to the Confirmation Date

**Allowed Amount** shall mean the amount of any Claim which becomes an Allowed Claim either through negotiations with the Debtor or through the entry of a Final Order.

**Allowed Claim** (or "Allowed Class____Claim") shall mean either (a) a Claim with respect to which a Proof of Claim has been filed with the Court pursuant to Code Sec. 501 and Rule 3001 filed within an applicable period of limitation fixed by Rule 3003 or any Order of the Court; (b) a Claim which is deemed filed pursuant to Code Sec. 1111

(a) by virtue of such Claim having been scheduled in the list of Creditors prepared, filed, and amended by the Debtor or the Trustee with the Court pursuant to Code Sec. 521 (1) and Rule 1007 (b) and not listed as disputed, contingent or unliquidated; or (c) a Claim which is deemed an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not include any Claim as to which an objection or proceeding challenging the allowance thereof has been interposed by the Debtor, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Court, until such objection or proceeding has been overruled, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily Allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim arising subsequent to the Petition Date.

**Allowed Priority Tax Claim** shall mean a Priority Claim under Code §507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean either (a) a Secured Claim to the extent that neither the security interest underlying the Claim is challenged nor the amount of the Secured Claim is challenged as provided for herein or (b) a Secured Claim which has become an Allowed Claim by order of the Court.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Bankruptcy Estate** shall mean the estate created pursuant to Code §541 by the commencement of Debtor's Chapter 11 case and shall include all property of the Estate as set forth in the Code.

**Bar Date** shall mean the date fixed by Order of the Court as the last date for the filing of Claims in this Case.

**Business Day** shall mean a day other than a Saturday or Sunday or any other day on which the majority of commercial banks located in the State of Maryland are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean any and all of the Debtors' or Reorganized Debtors' actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether now known or unknown, in law, equity, or otherwise, including, without limitation, all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, and any and all other claims or rights of any value whatever, at law or in equity, against any Creditor or third party.

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, Secured, or Unsecured; or any right to any equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, Secured, or Unsecured.

**Class** shall mean any class into which Claims or Interests are classified under the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim, etc.,** shall mean a specific Class into which Claims or Interests are classified under Article III of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. §101, et seq., and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to Code §1129.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Court.

**Confirmation Order** shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of the Code.

**Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of Maryland, Baltimore Division, in which the Case is pending together with any court having jurisdiction to hear appeals from that bankruptcy court to the extent any such appeals are taken in connection with the Case.

**Creditor** shall have the same meaning as set forth in Code §101(10).

**Debtors** shall have the same meaning as Jason Whitney Bridges and Allysin Elizabeth Bridges for all periods before and after the Petition Date. For purposes of the Plan, any references to the Debtors in connection with actions which must be taken shall be deemed to be references to the Reorganized Debtors, as appropriate.

**Debtors' Business** shall mean the business of the Debtors as described in Article I of this Plan.

8

**Disclosure Statement** shall mean the Disclosure Statement approved (or to be approved) for distribution by the Court pursuant to Code §1125 together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against the Debtors which is not an Allowed Claim and which has not been disallowed by a Final Order of the Court.

**Effective Date** shall mean a date which is the later of the date occurring fifteen(15) days after the Confirmation Date provided that no appeal is taken of the Confirmation Order in the previous fourteen (14) days, the date upon which any appeal of the Confirmation Order is finally resolved by a court of competent jurisdiction, or the date upon which the last of the Conditions Precedent has been met as provided for in the Plan.

**Final Order** shall mean an Order or judgment of the Court which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending.

**Holders of Allowed Claims** shall mean all persons or entities holding Allowed Claims against the Debtors.

**Impaired Class** shall mean any Class whose members are holders of Claims or Interests which are Impaired within the meaning of Code § 1124.

**Income** shall mean all income of the Debtors received after the Petition Date including, without limitation, any funds recovered in connection with (a) any and all legal actions, or threatened legal actions, commenced pursuant to Code §§ 541 through 554 or pursuant to comparable provisions of the laws of any jurisdiction, whether federal, state or foreign; and (b) any and all Causes of Actions or threatened legal actions or any other

civil case or action under Federal and State law. Income includes not only actual recoveries from legal proceedings but also any funds paid to settle such legal proceedings, whether or not any legal proceedings have been filed. Income shall only be used as provided for in the Plan.

**Income Expenses** shall mean all expenses, including, without limitation, professional fees, incurred after the Effective Date pursuant to the Plan to recover Income for the benefit of the Debtors' creditors.

**Interest** shall mean any outstanding share or shares of common stock, a warrant for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, beneficial interest, or other equity instruments in the Debtors.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by any party with standing to bring such a challenge.

**Order** shall mean a determination, decree, adjudication or a judgment issued or entered by the Court.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims as provided for herein.

**Payment Date** shall mean any date upon which Payments are made pursuant to the Plan.

**Person** shall mean an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization or a government or agency or political subdivision thereof.

**Petition Date** shall mean January 12, 2013, the date on which the Debtors filed their voluntary petition for relief under Chapter 11 of the Code.

**Plan** shall mean this Chapter 11 Plan of Reorganization, as amended or modified in accordance with the terms hereof and with the Code and Rules.

**Prime Rate** shall be the prime rate of interest as published in the WALL STREET JOURNAL on the date of the hearing on the Disclosure Statement, on the date of the Confirmation Hearing, on the Confirmation Date, and on each other date on which the Prime Rate is a material component of a Plan provision.

**Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such Claim is entitled to priority in payment under Code § 507.

**Pro Rata Share** shall mean, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date. The term "Pro Rata Share" shall also be applied in respect of Administrative Claims, Priority Tax Claims, and Priority Claims as the context requires in the Plan.

**Professional** shall mean, for all periods prior to the Effective Date, any professional employed in the Case with the approval of the Bankruptcy Court pursuant to

Section 327 or 1103 of the Code and, for all periods after the Effective Date, any professional employed by the Debtors or by a committee appointed under Code § 1102.

**Proponents** shall mean the Debtors.

**Proof of Claim** shall mean a proof of Claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001, 3002, or 3003.

**Reorganized Debtors** shall refer to the same person or entity as the term "Debtors" for all periods following the Effective Date and shall be deemed to have the same meaning as "Debtors" for all periods prior to the Effective Date for purposes of interpreting the Plan. The Reorganized Debtors shall be organized as provided in the Plan.

**Reserved Claims** shall mean all Disputed Claims as of the applicable Payment Date in the full amount listed in the schedules filed by the Debtors, unless a Proof of Claim was timely filed with respect to such Claim, in which case in the face amount of such Proof of Claim, or unless such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing the Reserved Claim.

Notwithstanding any other language in the Plan, Reserved Claims shall not include any Disallowed Claims.

**Rule or Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtors, shall only be an Allowed Secured Claim to the extent that the underlying security interest is recognized as valid by the Court and the difference in amount between such a creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Tax Claim** shall mean an Unsecured Claim for taxes entitled to priority under Code §507(a)(8).

**Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interests which are not Impaired within the meaning of Code § 1124.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

### III. CLASSIFICATION OF CLAIMS AND INTERESTS

**A. Class 1.** The Class 1 Claim shall consist of the Allowed Secured Claim of Homewood Federal Savings Bank, which is secured by a first priority  deed of trust lien on the real property known as 712 Gorsuch Avenue, Baltimore, MD 21218 (hereinafter the "712 Gorsuch Avenue Property").

**B. Class 2.** The Class 2 Claim shall consist of the Allowed Secured Claim of M&T Bank, which is secured by a first priority deed of trust lien on the real property known as 1813 Saint Paul Street, Baltimore, MD 21201 (hereinafter the "1813 Saint Paul Street Property").

**C. Class 3.** The Class 3 Claim shall consist of the Allowed Secured Claim of Bank of America, NA, which is secured by a first priority deed of trust lien on the real property known as 835 Hollins Street, Baltimore, MD 21201 (.hereinafter the "835 Hollins Street Property") and by a lien on the cash collateral rental income from the 835 Hollins Street Property.

**D. Class 4.** The Class 4 Claim shall consist of the Allowed Secured Claim of Wells Fargo Bank, NA, which is secured by a first priority deed of trust lien on the real property known as 818 Hollins Street, Baltimore MD 21201 (hereinafter known as the "818 Hollins Street Property) and by a lien on the cash collateral rental income from the 818 Hollins Street Property.

**E. Class 5.** The Class 5 Claim shall consist of the Allowed Secured Claim of Susquehanna Bank, which is secured by a purchase money security interest on the Debtors' automobile a 2007 Hyundai Santa Fe.

**F. Class  6.** The Class 6 Claims shall consist of the Allowed Unsecured Priority Claims of each of the unsecured tenants of the Debtors' residential rental properties with respect to their respective security deposits for their respective residential leases.

**G. Class  7.** The Class 7 Claims shall consist of the Allowed Unsecured Claims of each unsecured creditor who decides to reduce his, her or its unsecured claim to the amount of $500.00.

**H. Class  8.** The Class 8 Claims shall consist of the Allowed Unsecured Claims of all other general unsecured creditors.

**I. Class 9.** The Class 9 Interests shall consist of all of the Debtors' equity interests in the Debtors' residential rental property business, which shall be operated as of the Effective Date of the Plan in the form of a Maryland limited liability company owned by the Debtors as tenants by the entireties and treated for tax purposes as a partnership.

## IV. TREATMENT OF CLAIMS AND INTERESTS

**1. Class 1.** The Class 1 Allowed Secured Claim of Homewood Federal Savings Bank, which is secured by a first priority deed of trust lien on the 712 Gorsuch Avenue Property, shall be paid through the modification of the subject deed of trust loan, specifically the reduction of the loan principal amount to $152,000.00, the fair market value of the 712 Gorsuch Avenue Property, the annual fixed interest rate of 4.00% for the remaining 25.917 year term of the deed of trust loan from January 12, 2013 through December 1, 2038, which results in a new monthly principal and interest payment of $785.83. The new monthly deed of trust loan payment shall be comprised of the new monthly principal and interest payment of $785.83 and the appropriate monthly escrow amounts for real property taxes, $220.75 , and for insurance, 140.50 , resulting in the new monthly deed of trust loan payment of $1,147.08. Homewood Federal Savings Bank, the secured creditor, which is the holder of the allowed secured claim in this secured Class, shall retain the lien securing such claim to the extent of the allowed amount of such claim, whether the property subject to such lien is retained by the Debtors or transferred to another entity, in accordance with the provisions of Bankruptcy Code § 1129(b)(2)(A)(i)(I). The Allowed Unsecured Claim of Homewood Federal Savings Bank shall be paid on a *pro rata* basis as a member of the Class 9 General Unsecured Claims.

**2. Class 2.** The Class 2 Allowed Secured Claim of M& T Bank, NA, which is secured by a first priority deed of trust lien on the 1813 Saint Paul Street Property, shall be paid through the modification of the subject deed of trust loan, specifically the reduction of the loan principal amount to $168,000.00, the fair market value of the 1813 Saint Paul Street Property, the annual fixed interest rate of 4.000% for the remaining 25.250 year term of the deed of trust loan from January 12, 2013 throughApril 1, 2038, which results in a new monthly principal and interest payment of $881.66. The new monthly loan payment shall be comprised of the new monthly principal and interest payment of $881.66 and the appropriate monthly escrow amounts for real property taxes, $141.67, and for insurance, $151.08, resulting in the new monthly deed of trust loan payment of $1,174.41. M & T Bank, NA, the secured creditor, which is the holder of the allowed secured claim in this secured Class, shall retain the lien securing such claim to the extent of the allowed amount of such claim, whether the property subject to such lien is retained by the Debtors or transferred to another entity, in accordance with the provisions of Bankruptcy Code § 1129(b)(2)(A)(i)(I). The Allowed Unsecured Claim of M & T Bank, NA, shall be paid on a *pro rata* basis as a member of the Class 9 General Unsecured Claims.

**3. Class 3.** The Class 3 Allowed Secured Claim of Bank of America, NA, which is secured by a first priority deed of trust lien on the 835 Hollins Street Property and by a recorded assignment of the cash collateral rental income from the 835 Hollins Street Property, shall be paid through the modification of the subject deed of trust loan, specifically the reduction of the loan principal amount to $128,000.00, the fair market value of the 835 Hollins Street Property, the annual fixed interest rate of 4.00% for the

remaining  22.083 year term of the deed of trust loan from January 12, 2013 through February 1, 2035, which results in a new monthly principal and interest payment of $728.11. The new monthly loan payment shall be comprised of the new monthly principal and interest payment of $728.11 and the appropriate monthly escrow amounts for real property taxes, $531.96, and for insurance, $195.00 , resulting in the new monthly deed of trust loan payment of $1,455.07. Bank of America, NA, the secured creditor, which is the holder of the allowed secured claim in this secured Class, shall retain the liens securing such claim to the extent of the allowed amount of such claim, whether the property subject to such liens is retained by the Debtors or transferred to another entity, in accordance with the provisions of Bankruptcy Code § 1129(b)(2)(A)(i)(I). The Allowed Unsecured Claim of Bank of America, NA shall be paid on a *pro rata* basis as a member of the Class 9 General Unsecured Claims.

**4. Class 4.** The Class 4 Allowed Secured Claim of Wells Fargo Bank, NA, which is secured by a first priority deed of trust lien on the 818 Hollins Street Property, and by a recorded assignment of the cash collateral rental income from the 818 Hollins Street Property, shall be paid through the modification of the subject deed of trust loan, specifically the reduction of the loan principal amount to $272,000.00, the fair market value of the 818 Hollins Street Property, the annual fixed interest rate of 4.00%, for the remaining 26.667 year term of the deed of trust loan from January 12, 2013 through September 1, 2039, which results in a new monthly principal and interest payment of $1,383.73.  The new monthly loan payment shall be comprised of the new monthly principal and interest payment of $1,383.73 and the appropriate monthly escrow amounts for real property taxes, $376.42, and for insurance, $159.92 resulting in the new monthly

deed of trust loan payment of $1,920.07. Wells Fargo Bank, NA, the secured creditor, which is the holder of the allowed secured claim in this secured Class, shall retain the liens securing such claim to the extent of the allowed amount of such claim, whether the property subject to such liens is retained by the Debtors or transferred to another entity, in accordance with the provisions of Bankruptcy Code § 1129(b)(2)(A)(i)(I). The Allowed Unsecured Claim of Wells Fargo Bank, NA shall be paid on a *pro rata* basis as a member of the Class 9 General Unsecured Claims.

**5. Class 5.** The Class 5 Allowed Secured Claim of Susquehanna Bank, which is secured by a first priority security interest on the Debtors' automobile, a 2007 Hyundai Santa Fe, shall be paid through the modification of the subject loan, specifically the reduction of the loan principal amount to $9,320.00, the fair market value of the 2007 Hyundai Santa Fe, the annual fixed interest rate of 3.75%,  for the remaining 2.915 year term of the retail installment loan from January 12, 2013 through December 1, 2015, which results in a new monthly principal and interest payment of $281.68. Susquehanna Bank, the secured creditor, which is the holder of the allowed secured claim in this secured Class, shall retain the lien securing such claim to the extent of the allowed amount of such claim, whether the property subject to such lien is retained by the Debtors or transferred to another entity, in accordance with the provisions of Bankruptcy Code § 1129(b)(2)(A)(i)(I). The Allowed Unsecured Claim of Susquehanna Bank shall be paid on a *pro rata* basis as a member of the Class 9 General Unsecured Claims.

**6. Class 6.** The Class 6 Allowed Unsecured Priority Claims of each of the unsecured tenants of the Debtors' rental residential properties with respect to their respective security deposits for their respective residential leases shall continue to be paid

in accordance with the provisions of their respective residential leases, and are unimpaired.

**7. Class 7.** The Class 7 Allowed Unsecured Claims of each unsecured creditor who agrees to reduce his, her or its unsecured claim to the amount of $500.00 shall be paid the agreed amount of $500.00 on or before the thirtieth (30th) calendar day after the Effective Date of the Plan.

**8. Class 8.** The Class 8 Allowed Unsecured Claims of all other general unsecured creditors shall be paid under the Plan on a *pro rata* basis property in the form of cash the value of which "is not less than the projected disposable income of the debtors (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan". *See* Bankruptcy Code §1129(a)(15)(B). The payments due under the Plan to the Class 8 general unsecured creditors shall be made during the first sixty (60) months after the Effective Date of the Plan in monthly payments on the 15th day of each month commencing with the month immediately following the month in which the Effective Date of the Plan occurs and ending on the 15th day of the sixtieth (60th) month following the month in which the Effective Date of the Plan occurs.

**9. Class 9.** The Class 9 Equity Interests in the Debtors' residential rental property business shall be retained   100% by the Debtors, who shall provide new value in money or money's worth in the amount of Twenty Thousand Dollars and Zero Cents ($20,000.00), an amount reasonably equivalent to the value of their participation in the reorganization of their business.  The new value in money or money's worth shall be paid

by the Debtors into the Debtors in Possession bank account on the Date of the Confirmation Hearing.

## V. ADMINISTRATIVE EXPENSES and Tax Claims.

### 1. Code §507(a)(2 )Administrative Expense Claims.

Holders of all Allowed Code §507(a)(2 )Administrative Expense Claims shall be paid in cash in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such Claim is determined by a Final Order of the Court. However, no provision of the Plan shall preclude the Debtors from paying any holder of an Administrative Expense Claim less than one hundred percent (100%) of his, her, or its Allowed Claim in Cash on the Effective Date provided that such Claim holder consents to different payment terms.

The Debtors estimate that the asserted Administrative Expense Claims will be approximately $25,000.00. This includes all of the Debtors' professionals' Claims, including the claims of any professionals who may need to be employed in addition to Rudolph E. DeMeo, attorney for the Debtors. The professional fees and necessary expenses of Mr. DeMeo are estimated to be in the approximate sum of $18,000.00, consisting of approximately $17,000.00 in attorney's fees and approximately $1,000.00 in necessary expenses.

### 2. Code §507(a)(8) Priority Tax Claims.

Unless otherwise provided in this Plan, each Holder of an Allowed Code §507(a)(8) Priority Tax Claim shall be paid in regular monthly installment payments in cash over a period not to exceed five (5) years from the date of assessment at the applicable Statutory Rate, and in a manner not less favorable than the most favored non-

priority unsecured claim (other than convenience class creditors paid in cash), unless the holder of the claim agrees to less favorable treatment.

## VI.     UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

The Debtors assume each of the unexpired residential leases scheduled in Schedule G, as amended. It is the position of the Debtors that the unexpired leases and executory contracts listed in Schedule G, as amended, filed pursuant to Rule 1007, are the only leases and executory contracts to which the Debtors have been parties on and/or after the filing of this Chapter 11 case. The Debtors' **Rent Roll and  Residential  Leases,** which show the rental income generated from the leases, will be filed as  **Exhibit 3** to the Disclosure Statement.

## VII.    MEANS OF IMPLEMENTING THE PLAN.

### 1.  Summary.

The Plan contemplates 8 classes of Claims. Claims Class 6 is unimpaired. Claims Classes 1 through 5, 7 and 8 are impaired. Equity Interests Class 9 is unimpaired. On the Effective Date of the Plan, all of the prepetition equity in the Debtors shall remain in the Debtors. The List of Claims of Secured Creditors, Priority Unsecured Creditors, and Unsecured Creditors is attached as Exhibit 4 to the Disclosure Statement.

### 2. Funds Generated During Chapter 11 Case.

Funds generated from operations prior to and after the Effective Date of the Plan will be used for the funding of the operations of the Debtors' residential rental property business and for the funding of the Plan. The Debtors shall use the net operating income from their 4 residential rental properties in their residential rental property business and their monthly disposable income for the five year period of their Chapter 11 Plan to fund

the Plan. A copy of the Chapter 11 Plan Projected Disposable Income for the Five Year Period of August 1, 2013 through July 31, 2018,  will be filed as Exhibit 8 to the Disclosure Statement.

**3. Additional Provisions**.

**a. Transfer of Claims.**

In the event that the holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Reorganized Debtors in writing of such transfer. The Reorganized Debtors shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until the Reorganized Debtors shall have received notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtors shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

**b. Term of Injunction or Stays**.

Unless otherwise provided in the Confirmation Order, all injunctions or stays provided for Chapter 11 cases pursuant to sections 105 or 362 of the Code or previously imposed in the Bankruptcy Case by the Court or otherwise in existence on the Confirmation Date shall remain in full force and effect until the entry of a final decree dismissing the case.

**c. Procedures for Resolving Disputed Claims**.

**1) Prosecution of Objections to Claims**.

Unless otherwise ordered by the Bankruptcy Court after a hearing, and except as otherwise provided in the Plan, the Debtors shall have the exclusive right to make and file objections to all Claims. All Claims objections filed prior to or after Confirmation will be administered and maintained by the Debtors and finished by the Reorganized Debtors.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Chapter 11 Case, against or with respect to any Claim or Equity Interest.

Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Chapter 11 Case as if the Chapter 11 Case had not been commenced.

**2) Estimation of Claims**.

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to

such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

### 3) Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

### 4) Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtors' Cash and Assets, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise

provided in the Plan, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

**5) Allowance of Claims and Interests**.

**(i). Disallowance of Claims**.

According to the Plan, all Claims held by Entities against whom the Debtors have obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed Disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtors by that Entity are turned over to the Debtors.

**(ii). Allowance of Claims**.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Chapter 11 Case, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim or Equity Interest.

**(iii). Controversy Concerning Impairment**.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after

notice and a hearing, shall determine such controversy on or before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

### VIII. Confirmation, Consummation, and Effect of Confirmation of the Plan.

#### 1. Notice of Confirmation Hearing; Objections to Confirmation.

Section 1128 of the Code requires the Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons prior to the Confirmation Hearing by the date set by Order of the Court.

Counsel for the Debtors:

Rudolph E. DeMeo, Esquire
1449 Light Street
Baltimore, Maryland 21230
redemeo@gmail.com

United States Trustee:

Edmund A. Goldberg, Esquire
Office of the United States Trustee
Garmatz Federal Court House
101 West Lombard Street, Suite 2625
Baltimore, MD 21201
Edmund.A.Goldberg@usdoj.gov

#### 2. Financial Information Relevant to Confirmation.

The Debtor will present financial information relevant to Confirmation in the following named Exhibits 1 through 8 to the Disclosure Statement:

1. List of Assets

2. Debtors' 4 Real Properties' Appraisal Reports

3. Rent Roll and Residential Leases

4. List of Claims of Secured Creditors, Priority Unsecured Creditors, and Unsecured

Creditors as of January 12, 2013, the date of the filing of the Chapter 11 Case

5. Net Operating Income during the Relevant Period Prior to the Filing of the Chapter 11

Case: period of January 1, 2011 through December 31, 2012

6. Federal and Maryland Income Tax Returns for the Tax Years 2011 and 2012

7. Net Operating Income during the Chapter 11 Case: the period of January 1, 2013

through July 31, 2013

8. Chapter 11 Plan Projected Disposable Income for the Five Year Period of August 1, 2013 through July 31, 2018The Debtors also refer all creditors and other parties in interest to the financial information set forth in the Debtors'  Monthly Operating Reports which have been filed with the Court and which monthly reports will continue to be filed with the Court until the confirmation of the Plan..

**3. Confirmation Standards**.

For a plan of reorganization to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for additional financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met. The Debtors believe that the Plan satisfies all of the requirements for Confirmation.

**a.  Best Interests Test**.

Before the Plan may be confirmed, the Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were, on the Effective Date, liquidated under Chapter 7 of the Code. The Debtors believe that satisfaction of this test is established by the Liquidation Analysis,  which will be filed  as Exhibit 9 to the Disclosure Statement.

To determine what holders of Claims and Equity Interests would receive if the Debtors were liquidated, the Court in the Chapter 11 case must determine how the assets and properties of the Debtors would be liquidated and distributed in the context of a Chapter 7 liquidation case.

In addition, if, in a Chapter 11 case, the Debtors own assets which would be available to be distributed in a Chapter 7 case, the Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtors during the Chapter Cases, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and could eliminate the possibility that Unsecured

Creditors and holders of Equity Interests would receive any distributions in a Chapter 7 case..

The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Equity Interests, including the following:

a. the possible costs and expenses of the Chapter 7 trustee or trustees;

b. the probable adverse effect on recoveries by Secured Creditors under Chapter 7 due to reduced sale prices for the Debtors' real property assets caused by the forced Chapter 7 liquidation by foreclosure sales;

c. the Liquidation Analysis, which will be filed  as Exhibit 9 to the Disclosure Statement,  clearly will show that there would be no return for unsecured creditors in a Chapter 7 case;

d. the Debtors' loss to foreclosure sales of 4 of the 4 real properties which the Debtors own and operate in their residential rental property business, thereby ending the Debtors'  residential rental property business.

**b. Financial Feasibility**.

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by liquidation or by the need for additional financial reorganization of the Debtors unless the liquidation is proposed in the Plan. The Debtors believe that the Plan's proposed modifications of the deed of trust loans held by the secured creditors holding deed of trust liens on 4 of the Debtors' 4 real properties will generate sufficient funds to make all Plan Payments provided in the Plan. Based upon the projections set forth in the Chapter 11 Plan Projected Disposable Income for the Five Year Period of August 1, 2013 through July 31, 2018, which will be filed  as Exhibit 8 to the Disclosure Statement, the Debtors believe that the plan is feasible and that Confirmation of the Plan is not likely to be followed by liquidation or by additional financial reorganization.

### c. Acceptance by Impaired Classes.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section 4. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest Cash equal to the Allowed Amount of such Claim or, respect to any Interest, any fixed liquidation preference to which the holder is entitled.

A Class of Claims has accepted the Plan, if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (½)

in number of the Allowed Claims of such Class who vote to accept or to reject the Plan. A Class of Interests has accepted the Plan, if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under the Plan is deemed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required. Class of Claims 6 and Equity Interests Class 9 of the Plan are unimpaired and are conclusively presumed to have accepted the plan. Code §1126(f)

### d.  Confirmation Without Acceptance by all Impaired Classes.

The Code contains provisions that enable the Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims. §1129(b)(1) of the Code states: "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, as long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired

under, and has not accepted the Plan. Classes 1 through 5, 7 and  8of the Plan are impaired.

### 4.  Injunction as Part of Confirmation Order.

As part of the Confirmation Order, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, encumbrances, rights, and Interests in, to, or against the Debtors or any of their assets, from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between the Debtors and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Reorganized Debtors; provided, however, that such injunction shall not apply to any Claim asserted against the Debtors by a claimant based upon a default by the Debtors in the performance of their obligations to the claimant under the Plan.

### 5.  Plan Consummation.

The Plan will be consummated and Payments made, if the Plan is Confirmed pursuant to a Final Order of the Court, the Effective Date occurs, and the Reorganized Debtors and applicable parties reach agreement on any required documents. It will not be necessary for the Reorganized Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

### 6.  Effect of Confirmation.

### a.  Retention of Equity.

On the Effective Date, the Debtors shall retain all of their equity interests in their residential rental property business.

**b. Authority to Effectuate the Plan**.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

**c. Escrows**.

Pursuant to the Plan, all escrows previously established in the Chapter 11 Case and still in existence on the Effective Date will continue to be administered, and the escrowed funds shall be released, according to their terms and any orders of the Bankruptcy Court previously entered or the Plan. Escrowed funds that are released to the Reorganized Debtors after the Effective Date will be used to achieve Consummation and carry out the Plan.

**d. Post-Confirmation Obligations to the United States Trustee**.

Pursuant to 28 U.S.C. §1930(a)(6) and §1129(a)(12) of the Bankruptcy Code, all quarterly fees due to be paid to the United States Trustee, as determined by the Court at the hearing on confirmation of the Plan, shall be payable on or before the Effective Date of the Plan. Pursuant to the Post Confirmation Guidelines of the Office of the United States Trustee, the Debtors shall prepare and submit to the United States Trustee Post Confirmation Quarterly Reports. The Debtors shall continue to pay quarterly fees to the Office of the United States Trustee until the Chapter 11 case is closed.

33

**e. Retention of Professionals**.

The Reorganized Debtors may retain professionals on such terms, as the Reorganized Debtors deem reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Reorganized Debtors.

**f. Conditions to Effectiveness**.

The Effective Date shall not occur until all of the following conditions have been satisfied:

i. The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however*, that, if an appeal of the Confirmation Order is filed, but no stay is granted in connection with the appeal, the Debtors may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

ii. Inclusion in the Confirmation Order of an injunctive provision restraining and enjoining all individuals or entities, except as set forth in **Article V,** from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtors, or any property thereof, or against any of the Debtors' transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

iii. All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtors unless the Debtors have waived the requirement in writing. Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice, the Plan shall become Effective without further Order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan have been met.

**g. Binding Effect of Plan Provisions**.

Pursuant to the provisions of §1141(a) of the Bankruptcy Code, except as provided in subsections (d)(2) and (d)(3) of §1141, the provisions of the confirmed Plan bind the Debtors, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any creditor or equity security holder, whether or not the claim or interest of such creditor or equity security holder is impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan.

**h. Vesting of Property of the Estate**.

Pursuant to the provisions of §1141(b) of the Bankruptcy Code, except as otherwise provided in the Plan or in the Order confirming the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtors.

**i. Effect on Property Dealt with by the Plan.**

Pursuant to the provisions of §1141(c) of the Bankruptcy Code, except as provided in subsections (d)(2) and (d)(3) of §1141, and except as otherwise provided in the Plan or in the Order confirming the Plan, after confirmation of the Plan, the property dealt with by the Plan is free and clear of all claims and interests of creditors and equity security holders.

**j. Debts Excepted from Discharge under §523 of the Bankruptcy Code**.

Pursuant to the provisions of §1141(d)(2) of the Bankruptcy Code, a discharge under Chapter 11 does not discharge the Debtors who are individuals from any debt excepted from discharge under §523 of the Bankruptcy Code.

**k.  Discharge of Individual Debtors on Completion of All Plan Payments**.

Pursuant to the provisions of §1141(d)(5)(A) of the Bankruptcy Code, in this case in which the Debtors are individuals, unless after notice and a hearing the Court orders otherwise for cause, confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants the Debtors a discharge on completion of all of the Reorganized Debtors' payments under the Plan. The Reorganized Debtors shall file with the Court a motion seeking entry of a discharge after completion of all Plan payments.

**l.  Potential Material Tax Consequences**.

**The income tax consequences to the Debtors** from the new modified loans with respect to secured creditors in Classes of Claims 1 through 5 is an amount of debt forgiveness income with respect to each of the Debtors' 4 real properties and the Debtors' 2007 Hyundai Santa Fe automobile, resulting from the reduced values of the collateral real properties, the reduction of the original loans' terms, the change of the original loans' interest rates from adjustable interest rates to fixed annual rates, and/or the reduction of the original loans' interest rates. The resulting debt forgiveness income is exempt from income taxes as a result of the Debtors' Chapter 11 Bankruptcy but will reduce the tax basis of each of the respective subject 4 real properties and the automobile by the amount of debt forgiveness income with respect to each property.

**The real property tax consequences to the Debtors** from the values alleged in the Plan for each of the Debtors' 4 subject real properties are "reduced fair market values" and, therefore, "reduced real property assessments" and "reduced real property taxes" for each of the 4 properties. The Debtors intend to seek from Baltimore City a reassessment of each of the 4 real properties, based on the Court's determination of the values of each of the 4 real properties as of the date of the Court's Orders determining the fair market value of each of the 4 real properties. The Debtor also intends to seek appropriate refunds of real property taxes paid to Baltimore City during the period January 12, 2013 through the present, based on the difference between the assessed values currently set by Baltimore City and the values determined by the Court in this Chapter 11 case. The Debtors will notify Baltimore City's Office of the Solicitor and the Maryland Office of the Attorney General of the Debtors' intentions and will serve on those offices a copy of the Plan, the Disclosure Statement and all past and future pleadings and documents filed in this Chapter 11 case relevant to the valuation of each of the subject 4 real properties. The Debtors have no objection to Baltimore City's or the State of Maryland's moving to intervene in this case to protect Baltimore City's interests and the State of Maryland's interests in the valuation of the 4 subject real properties.

**m. Police Power**.

Nothing in the Plan shall be deemed to affect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, oth.er than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to the Confirmation Date to the extent such monetary claims are discharged pursuant to Section 1141 of the Code.

**n. Withdrawal and Nullification of the Plan**.

The Debtors reserve the right to withdraw the Plan at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw the Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) the Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

**o. Modification of the Plan.**

The Debtors may seek to amend or modify the Plan in accordance with §1127 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**p. Effectuation of the Plan**.

On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver or file with the Bankruptcy Court or record any agreements and other documents, and take any action which may be necessary or appropriate to support, effectuate, consummate and explain the provisions and the conditions of the Plan.

## IX. MISCELLANEOUS PROVISIONS.

**1. Retention of Jurisdiction**.

After the Effective Date, the Debtors will be free to perform all functions assigned to them under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

a. All objections to the allowance of Claims and Interests and the compromise of Claims;

b. All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtors' case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however*, that fees of professionals for services rendered after the Effective Date may be paid by the Reorganized Debtors in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

c. Any adversary proceedings or contested matters brought by the Debtors, including, but not limited to, the Causes of Action, the proceedings then pending or thereafter brought pursuant to Sections 544, 545, 547, 548, 549 and 550 of the Code;

d. All controversies and disputes arising under, or in connection with the Plan;

e. The enforcement and interpretation of the provisions of the Plan;

f. To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

g. Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

h. All Claims arising from the rejection of any executory contract or lease;

i. Such other matters as may be provided for in the Code or the Plan;

j. To protect the property of the Estate from adverse claims or interference inconsistent with the Plan; and

k. To ensure that Distributions are accomplished, as provided herein, and to resolve any dispute concerning the right of any person to a Distribution hereunder, under applicable law, or under a contract or agreement.

**2. Consent to Personal Jurisdiction**. By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Case, all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the personal jurisdiction of the Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Case. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in the jurisdictional provisions of the Plan.

**3. Section 1146 Exemption**. Pursuant to Section 1146 of the Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or the revesting, transfer or sale of any real or personal Property of, by or in the Debtors or the Reorganized Debtors, pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**4. Legal Actions Regarding the Debtors' Business Structure**. All matters provided for under the Plan involving the legal business structure of the Debtors or the

Reorganized Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Debtors or any entity.

**5. Successors and Assigns.** The rights, benefits, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**6. Headings**. Article, section, and paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of the Plan.

**7. Further Assurances**. The Reorganized Debtors, as appropriate, are authorized to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

**8. Barton Doctrine.** The "Barton Doctrine," arising from the case of *Barton v. Barbour*, *104 U.S. 126, 26 L. Ed. 672 (1881)* (holding that a trustee cannot be sued without leave of the bankruptcy court) and prohibiting a party from suing either a trustee, the officers of a debtor in possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of the Plan as they apply to the Debtors or the Reorganized Debtors and to their attorney and shall stand as one of the bases for enforcement of the provisions herein. *See, e.g., In the Matter of Linton, 136 F.3d 544, 545 (7th Cir. 1998); Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240-41 (6th Cir. 1993)* ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum

against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court… counsel for the trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee."); *Mangun v. Bartlett, (In re Balboa Improvements, Ltd.), 99 B.R. 966, 970 (9th Cir. BAP 1989)* (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court): *Matter of Krikava, 217 B.R. 275, 279 (Bankr. D. Neb. 1998)* ("[c]onsent of the appointing bankruptcy court is required even when the plaintiff seeks to sue in another federal court").

### 9. **Regulatory Approval and Retirement Plans**.

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions, the provisions of the Bankruptcy Code, and the Orders of the Court. The Debtors do not have any employees and do not have any retirement plans, except for their IRA, 403(b) Plan, and 401(k) Plan, which they have scheduled on their Schedules B and C, as amended.

### 10. Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered by private courier personally or mailed by regular United States Mail, postage prepaid, or mailed by certified United States mail, return receipt requested, to the following:

Counsel for the Debtor:

Rudolph E. DeMeo, Esquire
1449 Light Street
Baltimore, Maryland 21230

redemeo@gmail.com

Debtors:

Mr. and Mrs. Jason W. Bridges
PO Box 6201
Timonium, MD 21094

United States Trustee:

Edmund A. Goldberg, Esquire
Office of the United States Trustee
Garmatz Federal Court House
101 West Lombard Street, Suite 2625
Baltimore, MD 21201
Edmund.A.Goldberg@usdoj.gov

**11. Manner of Payment**.

Any payment of Cash made under the Plan may be made either by check drawn on an account of the Reorganized Debtors, by wire transfer, or by automated clearinghouse transfer from a domestic bank, at the option of the Reorganized Debtors.

**12. Compliance with Tax Requirements.**

In connection with the Plan, to the extent applicable, the Reorganized Debtors in making distributions under the Plan, shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit; and all Distributions, pursuant to the Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtors may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtors, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtors to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtors the information necessary to comply with any withholding

requirements of any governmental unit within six (6) months after the date of first notification by the Reorganized Debtors to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

**13. Transmittal of Distributions to Parties**.

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in the Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of the Plan to: (i) its address as set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.

**14. Distribution of Unclaimed Property**.

Except as otherwise provided in the Plan, any property (Cash or otherwise) to be

distributed under the Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution, together with all interest earned thereon, shall become an Asset of the Reorganized Debtors.

### 15. Fractional Cents; Undistributed Cash.

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

### 16. Governing Law.

Except to the extent that federal law (including the Code or the Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law thereof.

Dated: August 12, 2013                    Respectfully submitted,

                                          /s/Rudolph E. DeMeo___
                                          Rudolph E. DeMeo, Esq.
                                          1449 Light Street
                                          Baltimore, Maryland 21230
                                          Tel. No. (443) 465-4337
                                          redemeo@gmail.com
                                          Attorney for
                                          Mr. and Mrs. Jason W. Bridges